UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**SYSTEMATIC RECYCLING, LLC**,
a Michigan limited liability company,

                     Plaintiff,           Hon. David M. Lawson
v                                         Mag. Judge
                                              Case No. 09-cv-11430

**THE CITY OF DETROIT, MICHIGAN,**
a municipal corporation, and **WILLA
J. WILLIAMS,** in her official and
individual capacities, jointly and
severally,
_____/

**CINDY RHODES VICTOR   (P-33613)**    **ERIC B. GAABO   (P-39213)**
Attorney for Plaintiff                        Attorney for Defendants
The Victor Firm, PLLC                     CITY OF DETROIT LAW DEPARTMENT
35801 Mound Road                          660 Woodward Avenue, Suite 1650
Sterling Heights, MI, 48310               Detroit, MI, 48226
(586) 274-9600                                  (313) 237-3052
_____/

**DEFENDANTS CITY OF DETROIT AND WILLA WILLIAMS' BRIEF IN
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

      Plaintiff, Systematic Recycling, LLC, had been operating a composting facility at 9125 Jefferson Avenue in the City of Detroit, pursuant to a "Host Community Agreement" with Defendant, the City of Detroit.  That agreement expired by its own terms on March 31, 2009, and required that "Upon termination of this Agreement, Applicant shall have no right to continue to operate the facility."

      On March 2, 2009, Defendant Willa Williams, the Interim Director of the Detroit Department of Environmental Affairs, sent Plaintiff a letter notifying Plaintiff that the Agreement

would expire on March 31, 2009, and that pursuant to its agreement with the City, Plaintiff was to begin closure operations by April 1, 2009.

Rather than abide by the Agreement it had signed, Plaintiff instead filed this action on April 2, 2009, asserting that the City and Ms. Williams had violated its constitutional rights. On the same date, Plaintiff obtained an Order to Show Cause and Temporary Restraining Order, which provided that the City was not to "shut down or interfere with Plaintiff's operation."

Defendants removed the case to this Court on April 15, 2009.

On May 7, 2009, this Court entered an order scheduling the hearing on Plaintiff's motion for preliminary injunction to take place on May 12, 2009, and requiring that briefs relating to the motion be filed by noon on May 8, 2009.

The City requests that the Court deny Plaintiff's motion for preliminary injunction.

**FACTS**

**1.   General Rules, Regulations and Laws Relating to Composting Facilities.**

Under the City's zoning ordinance, composting facilities are categorized as "recycling centers." (See section 61-16-131, and 61-16-162, attached as **Exhibits Q** and **R**.) Recycling centers are designated as a "conditional use" in an M4 district (where the facility is located) by the zoning ordinance. (See section 61-10-83, attached as **Exhibit S**.) The City is permitted to impose such conditions on the approval of any conditional use as it deems appropriate to protect the public interest, health, safety, welfare and environment. See sections 61-3-218, 61-3-241(b), contained within **Exhibit T**.)

Wayne County also regulates composting facilities. For example, such facilities must comply with the Wayne County Solid Waste Ordinance (see **Exhibit U**), and the Wayne County

Solid Waste Management Plan (see **Exhibit V**) which requires, among other things, that a composting facility enter into a "Host Community Agreement" with the municipality in which the facility is to operate.

MCL 324.11521 (**Exhibit W**) contains specific regulations applicable to composting facilities. In addition, other generally applicable environmental Michigan statutes cover composting operations, as well as other facilities.

**2.    The Conditional Use Grant.**

Sometime in 2006, Plaintiff applied to the City's Buildings and Safety Engineering Department for a conditional zoning grant. At that time, there was considerable community opposition to the Plaintiff beginning composting operations, due to the potential for foul odors and other problems which might arise if the facility were not operated properly.

Despite such opposition, on April 26, 2006 (effective May 10, 2006), the City issued a conditional zoning grant to Plaintiff for the site in question. (See **Exhibit A**.)

The conditional zoning grant provided, in pertinent part:

> The occupancy of the premises without full compliance with all of the following conditions is unlawful and contrary to the provisions of the zoning ordinance and is subject to penalties as provided in the Ordinance, which may include the revocation of this grant and/or daily fine of $250-500 for not complying with these conditions." (Emphasis added.)

In particular, paragraph 26 of the conditional zoning grant stated:

> Systematic Recycling shall enter into a Host Community Agreement with the City of Detroit **prior to** operating the site as a Compost Facility. The Host Community Agreement shall include such provisions, requirements and bonding requirements as shall be agreed upon by the DEA [Detroit Department of Environmental Affairs] and the applicant. (Emphasis added.)

Shortly after the issuance of the conditional zoning grant, but before the City of Detroit had approved a Host Community Agreement, Plaintiff began illegally conducting composting operations on the site.

**3.    The Host Community Agreement**

The following year, on March 30, 2007, Plaintiff and the City entered into a Host Community Agreement. (See **Exhibit B**.) Due to the City's continuing concerns regarding the potential for Plaintiff's operation to constitute a nuisance[1], the City limited the term of the Agreement to 2 years, to expire on March 31, 2009.[2]  (See paragraph 17.)  This paragraph specifically stated that "**Upon termination of this Agreement, Applicant shall have no right to continue to operate the facility**."

Paragraph 12 of the Agreement provided that

> Applicant agrees that, prior to discontinuing its operations at the facility, it shall remove all solid waste, including that which is recyclable, refuse and fuel from the premises, restore the property to the condition that existed prior to any recyclable solid waste or other solid waste being deposited on the premises. . .

This paragraph also provided:

> In addition, prior to commencement of operations under this Agreement, Applicant will obtain a <u>performance bond</u>, to guarantee satisfaction of its obligations under this paragraph, with a bonding institution approved by

---

[1] The City was also aware at that time that the principal of Plaintiff, and/or her family members, had previously operated a composting facility in Macomb County, "King of the Wind," that had generated numerous complaints, and had finally been closed. (See newspaper articles attached as **Exhibit X**.)

[2] Unlike some agreements, the Host Community Agreement did not provide that it would automatically renew, unless one of the parties showed good cause for not renewing it, and provided the other party with specific notice.  Instead, the Host Agreement simply provided that it would expire, by its own terms, after 2 years.

>     the City, in the amount of $500,000 and subject to such terms and
>     conditions as are acceptable to the City.

Paragraph 14 of the Agreement also provided that "Applicant agrees to comply with all applicable state, local and federal laws, regulations and requirements regarding the construction and operation of the Facility, including but not limited to all environmental requirements."

**4.     Plaintiff's Violations of the Host Community Agreement.**

From March 30, 2007 to March 30, 2009, the City's inspectors periodically visited the site in response to complaints of odors, but such odors had typically dissipated by the time the City's inspectors received the complaint and visited the site.

However, other governmental entities cited Plaintiff repeatedly for violations of law.[3] See, for example:

>     a.     Michigan Department of Environmental Quality ("MDEQ") letter of Violation dated December 19, 2006, attached as **Exhibit C**;
>
>     b.     MDEQ letter of Violation dated October 8, 2007, attached as **Exhibit D**;
>
>     c.     MDEQ letter of Warning dated October 7, 2008, attached as **Exhibit E**;
>
>     d.     Wayne County Department of Environment letter dated November 19, 2007, attached as **Exhibit F**;
>
>     e.     Wayne County Department of Environment letter dated November 7, 2008, attached as **Exhibit G.**

(These are only a sampling of documents noting violations law by various governmental entities.)

Local residents also complained of frequent odors from Plaintiff's composting facility.

---

[3] Again, the Community Host Agreement required that Plaintiff "comply with **all** applicable state, local and federal laws, regulations and requirements," not just City of Detroit ordinance requirements.

See, e.g., Affidavits of Anthony Laginess and Norma West filed in <u>Laginess v Systematic Recycling, LLC</u>, Wayne County Circuit Court, Case No. 07-727604-CZ, attached as **Exhibits H** and **I**, respectively. (Again, this is just a sample of complaints by residents.)

**5.     The Bribery Scandal Relating to Systematic.**

In January 2009, it was also revealed that the Host Community Agreement had been procured in 2007 by bribing City officials. In a criminal proceeding brought by the United States, James Rosendall, a representative of the owner of the site, admitted, among other things, that:

> **During the period October to December 2006, defendant [Rosendall] caused Systematic to pay Intermediary A over $20,000, in part, to help defendant obtain later approval of the Community Host Agreement with the Detroit City Council, which was receiving opposition to the facility from local community groups and activists.**

(See Rule 11 Plea Agreement entered in United States of America v James Rosendall, United States District Court for the Eastern District of Michigan, Case No. CR 09-20025, attached as **Exhibit J**, at page 8.[4])

6.     **The Expiration of the Host Community Agreement.**

As the expiration of the Host Community Agreement approached in early 2009, City officials considered what actions to take upon its expiration. In light of the fact that (a) the Host Community Agreement had apparently been procured by bribing City officials, (b)

---

[4] Interestingly, the other company implicated in Mr. Rosendall's plea agreement, Minergy Detroit, LLC, now known as Synagro Detroit, LLC, voluntarily terminated its contract with the City of Detroit mere days after the bribery became known, rather than taking the frivolous position that the agreement was still valid, which appears to be Plaintiff's position in this case. (See Termination Agreement and Mutual Release, dated January 30, 2009, attached as **Exhibit K**.)

Plaintiff had repeatedly violated applicable laws and regulations during the term of the Agreement; ( c) numerous residents and community groups had voiced complaints regarding noxious odors caused by the facility; and (d) the performance bond provided by Plaintiff to guarantee the clean up of the facility upon closure was scheduled to expire on May 14, 2009 (see **Exhibit L**), the City decided that it would make no attempt to enter into a new Host Community Agreement, but would simply allow the existing Agreement to expire, and would request Plaintiff to clear and clean the site, in accordance with the Agreement.

**7.    The City's Notice to Plaintiff to Cease Operations and Commence Cleanup Activities, as Required by the Host Community Agreement.**

Although the City was not required to give Plaintiff notice (since it was not attempting to terminate the Agreement before its expiration date), the City did so, as a courtesy. On March 2, 2009, Willa Williams, the Interim Director of the City's Department of Environmental Affairs sent Plaintiff a letter, which stated, in its entirety:

> The Host Community Agreement (Agreement) entered into on March 30, 2007 between the City of Detroit (City) and Systematic Recycling, L.L.C. (SR), for a Compost Recycling Operation at 9125 W. Jefferson, Detroit, MI, expires March 31, 2009. This letter is to notify SR that the City shall allow the Agreement to expire.
>
> In accordance with Section 12, Clean-Up and Guarantee, and Section 13, Post-Closure Care, of the Agreement, SR shall commence closure activities no later than April 1, 2009." (See **Exhibit M**.)

This letter said nothing about Plaintiff's zoning grant, but merely stated that under the Agreement Plaintiff had voluntarily entered into, it was required to cease operations and begin closure activities.

**8.    The Present Lawsuit.**

Rather than commence closure activities as required by its contractual obligations under the Host Community Agreement, Plaintiff instead filed a "Complaint for Damages and for Injunctive Relief" in the Wayne County Circuit Court, Case No. 09-00777-CZ on April 2, 2009.

Plaintiff's Complaint contained a single count, "Claim Under 42 U.S.C. §1983," and falsely asserted that the City had unlawfully revoked Plaintiff's conditional zoning grant without due process of law.  (Again, the City's March 2, 2009 letter said nothing about Plaintiff's conditional zoning grant; it simply stated that the contract between the parties was expiring by its own terms, and that upon its expiration, Plaintiff was obligated to cease operations and begin to clear the site.)

On the same date, Plaintiff obtained an ex parte Order to Show Cause and Temporary Restraining Order.  That Order to Show Cause provided, in pertinent part, "defendants shall be enjoined from taking any action to shut down or interfere with Plaintiff's operation," and scheduled a hearing on Plaintiff's motion for a preliminary hearing to take place on April 17, 2009.

On April 16, 2009, the City removed the action to this Court, based on Plaintiff's reliance on 42 U.S.C. §1983 and other federal laws.

## 9.     The Administrative Proceeding Relating to Plaintiff's Conditional Zoning Grant.

As noted above, prior to the filing of this suit, the City had not attempted to revoke Plaintiff's conditional zoning grant.  This was not necessary, since Plaintiff had voluntarily agreed to cease operations upon the termination of the Host Community Agreement. However, because Plaintiff had forcefully (and falsely) asserted that the City had revoked its zoning grant without due process, the City decided to begin the process of revoking Plaintiff's

conditional zoning grant, and to provide Plaintiff what it was apparently demanding in this suit - notice and an opportunity to contest this revocation at an administrative hearing to be held before an impartial hearing officer.

Accordingly, the City scheduled a show cause hearing to take place before a hearing officer on May 4, 2009, and consistent with its rules and ordinance provisions, published notice of the hearing in the Detroit Legal News. (See **Exhibit N**.)

As noted above, the $250,000 cleanup bond was scheduled to expire on May 14, 2009. In order to avoid the forfeiture of the bond, the City sent notice on April 22, 2009 to the bond company that it was filing a claim under the bond. The City explained that Plaintiff's Host Community Agreement had expired, and Plaintiff had refused to begin closure activities, as required by the Agreement. (See **Exhibit O**.)

On April 27, 2009, counsel for the City and Systematic participated in a telephone conference with the hearing officer presiding over the administrative show cause hearing regarding Plaintiff's zoning grant. At that time, Systematic asked for and was granted an adjournment of the show cause hearing until May 11, 2009. Accordingly, the City published an amended notice of the hearing in the Detroit Legal News, containing the new date. (See **Exhibit P**.)

10.     **Motions by the Parties and Court Rulings regarding the Temporary Restraining Order and the City's Administrative Proceeding.**

On April 29, 2009, Plaintiff filed an "Emergency Motion of Plaintiff for Entry Of an Order Holding the Defendants in Contempt and Imposing Sanctions on the Defendants for Violating the Temporary Restraining Order" (Document 3), alleging that the City's notice to

initiate an administrative proceeding to revoke Plaintiff's conditional zoning grant violated the terms of the Wayne County Circuit Court's restraining order.

The next day, this Court issued an order (Document 4) denying Plaintiff's request for sanctions, continuing the temporary restraining order, and setting plaintiff's motion for preliminary injunction to be held on May 20, 2009. The Court's order required the parties to submit briefs on the motion by May 13, 2009.

On May 5, 2009 the City filed an Emergency Motion for Clarification or Relief from the Court's April 30, 2009 Order (Document 5). In its motion, Defendants requested that the Court clarify whether holding an administrative hearing allowing Plaintiff to show cause why Plaintiff's conditional zoning grant should not be revoked.

On May 6, 2009, the Court issued a notice that the City's motion would be heard on May 12, 2009.

On May 7, 2009, the Court issued a followup "Order Scheduling Hearing on Plaintiff's Motion for Preliminary Injunction and Defendants' Emergency Motion to Amend or Correct the Court's November 30, 2009 Order." (Document 6.) This order confirmed that a hearing would be held on May 12, 2009 on the City's motion, but also moved the date for Plaintiff's motion for preliminary injunction to May 12, 2009, and required the parties to submit briefs on both motions by noon on May 8, 2009.

For the following reasons, the Court should deny Plaintiff's motion for preliminary injunction and dismiss Plaintiff's case.

## ARGUMENT

**I      Preliminary Injunction Factors.**

A preliminary injunction is an extraordinary remedy, which is appropriate only in very limited circumstances. In deciding whether to grant a preliminary injunction, a federal district court must consider and balance four factors:

1.  whether the plaintiff has established a substantial likelihood or probability of success on the merits;

2.  whether there is a threat of irreparable harm to the plaintiff if the injunction is not granted;

3.  whether issuance of the injunction would cause substantial harm to others; and

4.  whether the public interest would be served by granting injunctive relief.

Connection Distribution Co. v Reno, 154 F2d 281, 288 (6th Cir. 1998), cert. denied, 526 U.S. 1087, 143 L. Ed. 2d 650, 119S. Ct. 1496 (1999). As shown below, Plaintiff cannot establish any of these factors.

**II.     Plaintiff Is Not Substantially Likely to Prevail on its Legal Claims.**

    **A.     Elements of a claim under 42 §1983.**

Plaintiff's claim contains a single count, violation of 42 §1983. To establish a claim under 42 USC § 1983 based on an alleged denial of due process in violation of the Fifth or Fourteenth Amendment, a party must first show that it had a "property interest" sufficient to invoke federal protections. See Board of Regents of State Colleges v Roth, 408 US 564 (1972); Charlie's Towing & Recovery, Inc. v Jefferson County, 183 F3d 524, 527 (6th Cir 1999). Moreover, to establish a violation of 42 U.S.C. §1983 against a municipality, a plaintiff must show that it was injured through an established custom, policy or practice. City of Oklahoma

City v Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed. 2d 791(1985), rehearing denied, 471 U.S. 808, 106 S.Ct. 16, 87 L. Ed.2d 695.  Proof of a single instance of unconstitutional activity is generally not sufficient to establish a custom, policy or practice necessary to subject a municipality to liability under 42 USC § 1983.  City of Oklahoma City v Tuttle, supra, Fraire v City of Arlington, 957 F2d 1268 (5th Cir 1992), cert den 113 S. Ct. 462 , 121 L.Ed.2d 371 (1992).

### B. The City of Detroit Has Not Revoked or Attempted to Revoke Plaintiff's Conditional Zoning Grant Without Due Process.

Plaintiff's complaint and motion for preliminary injunction are both premised on the same assertion - that the City of Detroit, through its March 2, 2009 letter to Plaintiff, revoked Plaintiff's conditional land use grant.  This is a blatant and deliberate misstatement.  The City's letter did not purport to or threaten to revoke Plaintiff's conditional land use grant. In fact, the City's letter says nothing whatsoever regarding Plaintiff's zoning grant.  Instead, the letter simply states that the Host Community Agreement would expire on March 31, 2009 by its own terms, that the City did not plan to attempt to renew or extend the agreement, and that, in accordance with sections 12 and 13 of the Agreement, Plaintiff was to begin closure activities by April 1, 2009.

### C. Plaintiff Does Not Have a Constitutionally-Protected Property Interest in the Renewal of the Host Community Agreement.

Properly framed, the real issue before this Court is whether Plaintiff had a constitutionally-protected property interest in the execution of a new Host Community Agreement with the City.  Courts have repeatedly confirmed that parties to a contract do not have a property interest in the renewal of that contract upon its expiration.  For example, in

Grudzinski v. Staren, 87 Fed. Appx. 508  (6th Cir 2004) (attached as **Exhibit Y**), the plaintiff entered into a one-year agreement to participate in a medical residency program.  When the defendant refused to renew her agreement upon its expiration, the plaintiff sued, alleging a violation of 42 U.S.C. §1983.  The U.S. District Court for the Eastern District of Michigan dismissed the case, and the Sixth Circuit affirmed, stating:

> Because the state court factually determined Grudzinski's contract was for one year, she had no protected interest in continued employment once the year expired. MCO thus was free to decide not to renew her contract without affording her any process at all. See Curby v. Archon, 216 F.3d 549, 555 (6th Cir. 2000) HN6("When a public employee has no property right in continued employment, the employee may be discharged without a hearing or notice." (citing Christophel v. Kukulinsky, 61 F.3d 479, 482, 485 (6th Cir. 1995)).

Grudzinski v. Staren, supra, at 512.

The court issued a similar decision in Roscoe v. City of Albuquerque, 1994 U.S. App. LEXIS 10084. (See **Exhibit Z**.)   There, the plaintiff had entered into a series of Housing Assistance Payment Contracts ("HAP contracts") with the City of Albuquerque under which the city agreed to pay a portion of rent payments for individual renters under the federal Section 8 housing program.  Following complaints against the landlord, the defendant declined to renew the contracts.  The plaintiff sued under 42 §1983, but the trial court dismissed the claims.  The appellate court affirmed the dismissals, stating:

> The dispositive issue with respect to Roscoe's first two claims against each defendant is whether the city terminated the HAP contracts prior to their expiration, or whether the city simply allowed them to expire and chose not to renew them. If the latter is true, then unless Roscoe had a contractual or statutory right to renewal, his claims for breach of contract and due process violations fail as a matter of law. See Brown v. Independent School Dist. No. I-06, 974 F.2d 1237, 1239 (10th Cir. 1992) (there is no property interest in the renewal of an annual contract absent a statutory or contractual right to renewal).

> The undisputed facts show that the city informed Roscoe on May 7, 1991, that it <u>would not renew</u> "those H.A.P. Contracts which come up for renewal between now and February 11, 1992," which was the date on which the Roscoe's Limited Denial of Participation ("LPD") restriction from HUD would expire. R. Vol. III, Tab 159, Def. Ex. 60 at 2. The city further informed Roscoe that it did "not intend to enter into any new H.A.P. Contracts with [Roscoe]" until the LPD expired. Id. The city explicitly stated that it was <u>opting to let each HAP contract "run out"</u> rather than terminating each one immediately. Id. at 4. Accordingly, the district court based its decision in part on its finding that the city exercised its right not to renew the contracts instead of terminating them prior to their expiration.
>
>          *                  *                 *
>
> Having carefully reviewed the briefs and the record in this case, we conclude that summary judgment was appropriate for substantially the reasons stated by the district court.

<u>Roscoe v. City of Albuquerque</u>, supra, at *5.

The same is true here. Plaintiff had no property right in the Host Community Agreement being renewed or a new agreement being signed. Therefore, its constitutional claims must be dismissed.

        **D.**        **Defendants Have Not Engaged in Any Arbitrary or Capricious Actions.**

Plaintiff's Complaint alleges: "There was no competent, material or substantial evidence to justify the decision made by Defendants that Plaintiff cease operations at the Property, and by doing so, Defendants acted arbitrarily and capriciously in violation of Plaintiff's rights to substantive due process . . ." (See paragraph 31.) As noted above, Plaintiff did not have a property interest in having the Host Community Agreement extended beyond its stated March 31, 2009 termination date. Therefore, the City does not have to justify its decision to allow the contract to expire. However, even if the City did have to make this showing, there were ample

reasons why the City did not desire to extend the agreement.

First, as is evident from the Rule 11 Plea Agreement entered on January 26, 2009 in United States of America v James R. Rosendall, Jr. (see **Exhibit J**), the Host Community Agreement was procured by bribery. Courts throughout the country have confirmed that contracts procured by bribery are void ab initio as against public policy and unenforceable. See, e.g., Columbia Supply Co. v. United States, 54 Ct. Cl. 10 (1918); S.T. Grand, Inc. v. City of New York, 38 A.D.2d 467, 330 N.Y.S.2d 594, 597 (App. Div. 1972); Seltzer v. Metropolitan Electric Co., 199 Pa. 100 (1901); Honaker v. Board of Educ., 42 W. Va. 170, 176 (1896) (" A contract with the state, procured by bribery upon the officers having power to make it, is against public policy and void."). Also see, generally, Cook v. Wolverine Stockyards Co., 344 Mich 207 (1955). It was certainly reasonable for the City to not desire to enter into a new contractual agreement with Plaintiff under such circumstances.

Second, although Plaintiff asserts that the City's Department of Environmental Affairs did not cite Plaintiff for specific violations of law when it conducted site inspections, other governmental entities - the Michigan Department of Environmental Quality and the Wayne County Department of Environment, did find numerous violations. (See **Exhibits C - G**.) Moreover, City inspectors did find high odors on occasion (see **Exhibit AA**), and are prepared to testify that at the time of the final inspection on April 1, 2009, they noted violations of state law. The City Fire Department also responded to fires at Systematic's facility caused by excessive heat generated by improperly maintained compost piles. (See **Exhibit BB.)**

Third, the City cannot ignore the fact that numerous residents and business owners complained of noxious odors emanating from Plaintiff's facility on numerous occasions. (See

**Exhibits H and I**.)

Given all of these facts, it was certainly reasonable for the City to allow the Host Community Agreement to expire, and not seek to enter into a new contract.

### E. Defendants Have Taken No Actions Against Plaintiff on the Basis of the Gender of Plaintiff's Principal.

In its complaint, Plaintiff makes the preposterous allegation that the City's decisions were motivated by its knowledge that Plaintiff is a woman-owned business. However, Plaintiff concedes that Defendant Willa Williams, who sent the March 2, 2009 letter requesting that Plaintiff abide by its contractual obligations, is also a woman. The City knew that Renee Michaels was a principal of Plaintiff, but there is no evidence that the City was aware of the total makeup of the corporate entity, Systematic Recycling, LLC, and absolutely no evidence that Ms. Michaels' gender had anything to do with the decisions or actions of Willa Williams or any other City employee.

### F. Defendants Have Not Treated Plaintiff Differently than Other Similarly-Situated Entities.

At paragraph 32 of its complaint, Plaintiff alleges that "Defendants have singled plaintiff out for special disparate treatment, treating it differently than other similarly-situated entities, in violation of plaintiff's right to equal protection under the law . . ." Plaintiff does not identify any alleged "similarly-situated entities," and for good reason - there are no entities who are similarly situated. Plaintiff is the only composting facility operating in the City of Detroit. Moreover, to demonstrate that there is even one similarly-situated entity in the City of Detroit, Plaintiff would have to show that that entity (1) entered into a contract with the City, procured by bribery, that

had a defined term, and provided that upon expiration, the entity would cease operations; (2) repeatedly violated state laws, ordinances and regulations; (3) generated multiple complaints of nuisance odors; and (4) refused to cease operations upon the expiration of its contract.

Again, there is no such entity, and Plaintiff's equal protection claims should be dismissed.

### III.     Plaintiff Has Not Shown a Threat of Irreparable Harm.

Plaintiff has alleged but has not shown that it will suffer irreparable harm if this Court permits the City to enforce the Host Community Agreement requiring Plaintiff to cease operations. Plaintiff's allegations of harm - that this will completely destroy Plaintiff's business, will cause all bonding companies to forever refuse to issue any bonds to Plaintiff, etc. - are overstated. But even if Plaintiff could prove that the City took any illegal actions, and that these results were directly caused by Defendants's actions, Plaintiff may seek monetary damages, and, indeed, it has done so in this case.

An even more frivolous argument is that allowing the City to hold an administrative hearing to determine if Plaintiff's conditional zoning grant should be revoked would cause irreparable harm. It is disingenuous for Plaintiff to falsely claim that the City has already revoked its zoning grant without due process, but then to refuse to participate in such a process when the City has initiated it. Does Plaintiff want due process or doesn't it?

### IV      Granting an Injunction to Plaintiff Would Cause Substantial Harm to Others and Would Not Serve the Public Interest.

The third and fourth factors to be considered in determining whether injunctive relief is appropriate - whether issuance of an injunction would cause harm to others, and whether the

K:\DOCS\LIT\GAABE\a22000\brf\EG4944.WPD                      17

public interest would be served - overlap somewhat, and both of these factors favor Defendants. Granting a preliminary injunction to allow Plaintiff to operate indefinitely would cause harm to the residents, businesses and visitors who have already been subjected to intolerable odors on a continuing basis.  It does not serve the public interest to allow a party to blithely ignore its contractual obligations, and refuse to participate in administrative processes to determine whether its zoning grant should be revoked, while continuing to subject the neighboring community to continuing harm.  The Court should therefore deny Plaintiff's request for a preliminary injunction, and require Plaintiff to participate in an administrative show cause hearing to review its zoning grant as soon as possible.

## CONCLUSION

For the reasons stated above, Defendants request that this Honorable Court deny Plaintiff's request for preliminary injunction.

>                             Respectfully submitted,
>
>                             S/Eric B. Gaabo (P39213)
>                             Gaabe@law.ci.detroit.mi.us
>                             Attorney for City of Detroit
>                             City of Detroit Law Department
>                             1650 First National Building
>                             Detroit, MI 48226

Dated: May 8, 2009

## CERTIFICATE OF SERVICE:

## DEFENDANTS CITY OF DETROIT AND WILLA WILLIAMS' BRIEF IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

      I state that on May 8, 2009, I served Defendants City of Detroit and Willa Williams' Brief in Opposition to Motion for Preliminary Injunction upon Plaintiff by filing this document electronically with the U.S. District Court for the Eastern District of Michigan.

                                                                                                S/ Eric B. Gaabo (P39213)
                                                                                                gaabe@detroitmi.gov
                                                                                                Attorney for Defendant
                                                                                                1650 First National Building
                                                                                                Detroit, MI 48226
                                                                                                (313) 237-3057

Dated: May 8, 2009